LAW OFFICES
OF
BRUNO C. BIER, ESQ.

38 West 32nd Street, Suite 1603
New York, New York 10001
Tel: (212) 481-4900
Fax: (212) 481-9227

February 29, 2008

The Honorable Robert P. Patterson
United States District Judge
Southern District of New York
United States Courthouse
500 Pearl Street
New York, New York 10007

       Re: United States v. Chaudhary Nawaz – 07-cr-881 (RPP)
          Sentencing Memorandum

Dear Judge Patterson:

  This letter is submitted on behalf of Chaudhary Nawaz ("Mr. Nawaz"), who will be before this Honorable Court for sentencing on March 3, 2008. On September 17, 2007, Mr. Nawaz pleaded guilty to a violation of 18 U.S.C. § 1029(a)(2) and 2, and 18 U.S.C. § 1029(b)(2). See Presentence Investigation Report ("PSR") 3, ¶ 1-2. It is respectfully suggested that a number of considerations counsel for a sentence reflecting Mr. Nawaz's favorable equities. These considerations include Mr. Nawaz's employment history, his position as the main financial support for his wife and five young children, his role in the instant offense, the aberrant nature of the criminal conduct and lack of prior criminal history, the unlikelihood of recidivism, and his immediate acknowledgement of guilt, which permitted the government to focus its investigation and resources on the co-conspirators in this case. For these reasons, lenity is warranted in this case.

A.  Federal Sentencing Guidelines -- The Plea Agreement And Sentencing Guidelines Calculation

It is axiomatic that pursuant to <u>United States v. Booker</u>, 543 U.S. 220, 245-46 (2005), the Federal Sentencing Guidelines ("Guidelines") are advisory, but must be consulted with all of the other factors listed in 18 U.S.C. § 3553(a).  As the Supreme Court held in <u>Kimbrough v. United States</u>, -- U.S. --, 127 S. Ct. 558 (2007), "in the ordinary case, the [Sentencing] Commission's recommendation of a sentencing range will 'reflect a rough approximation of sentences that might achieve § 3553(a)'s objectives.'  The sentencing judge, on the other hand, has 'greater familiarity with … the individual case and the individual defendant before him than the Commission or the appeals court.'" (slip op., 20)  (citation omitted).  In <u>United States v. Crosby</u>, the Second Circuit Court of Appeals observed that "with the mandatory duty to apply the Guidelines excised, the duty imposed by 18 U.S.C. § 3553(a) to 'consider' numerous factors acquires renewed significance."  <u>United States v. Crosby</u>, 397 F.3d 103, 110-11 (2d Cir. 2005).

The Court of Appeals went on to identify "several essential aspects of <u>Booker/Fanfan</u> that concern the selection of sentences":

> First, the Guidelines are no longer mandatory.  Second, the sentencing judge must consider the Guidelines and all of the other factors listed in section 3553(a).  Third, consideration of the Guidelines will normally require determination of the applicable Guidelines range, or at least identification of the arguably applicable ranges, and consideration of applicable policy statements.  Fourth, the sentencing judge should decide, after considering the Guidelines and all the other factors set forth in section 3553(a), whether (I) to impose the sentence that would have been imposed under the Guidelines, i.e., a sentence within the applicable Guidelines range or within permissible departure authority, or (ii) to impose a non-Guidelines sentence.  Fifth, the sentencing judge is entitled to find all the facts appropriate for determining either a Guidelines sentence or a non-Guidelines sentence.

397 F.3d at 113.

In the instant case, pursuant to a plea agreement entered into between Mr. Nawaz and the government, Mr. Nawaz pleaded guilty to one count of 18 U.S.C. § 1029(a)(2) and 2 and 18 U.S.C. § 1029(b)(2) on September 17, 2007.  See PSR 3, ¶1-4.  Mr. Nawaz admitted that he used unauthorized access devices during a one-year period, and in so doing, obtained a thing of value aggregating $1,000 and more during that period in violation of 18 U.S.C. 1029(a)(2) and 2.  See id..  Mr. Nawaz also acknowledged that he conspired with others to use unauthorized access devices during a one-year period, and in so doing, obtained a thing of value aggregating $1,000 and more during that period in violation of 18 U.S.C. § 1029(b)(2).  See id..

The plea agreement between the government and Mr. Nawaz stipulated that the base offense level is **6** pursuant to Guidelines § 2B1.1(a)(2).  The agreement also stipulated that a **14** level increase is applicable pursuant to § 2B1.1(b)(1)(H), because the loss amount was more than $400,000 but not in excess of $1,000,000.  See PSR 3, ¶4(a)-(d).  The agreement also provided that Mr. Nawaz is entitled to a **-2** level reduction pursuant to § 3E1.1(a), as he clearly demonstrated acceptance of responsibility; and an additional **-1** level reduction pursuant to § 3E1.1(b) was provided for Mr. Nawaz's timely notice of his intention to plead guilty.  See PSR 3-4, ¶4(e)-(f).  Thus, the plea agreement stipulated that the total offense level under the Guidelines is **17**.  As Mr. Nawaz has no prior arrests or convictions, his Criminal History Category is I.  Thus, the advisory Guidelines provide for a sentence of 24 to 36 months imprisonment and a fine range of $5000 to $50,000.  See PSR 4, ¶4(g)-(j).

However, the Probation Office calculated an additional **2** level increase, which was not contemplated by the government or Mr. Nawaz in the plea agreement, because of the offense allegedly "involved the unauthorized transfer or use of any means of identification unlawfully to produce or obtain any other means of identification," pursuant to § 2B1.1(b)(10)(C)(i).  See PSR

7, ¶28. However, as noted, the government did not seek such an increase under this provision. Moreover, in his plea allocation, Mr. Nawaz never alleged facts supporting a finding that he was "involved [in] the unauthorized transfer or use of any means of identification unlawfully to produce or obtain any other means of identification."

Most significantly, the facts alleged by the Probation Office do not support a finding that Mr. Nawaz is subject to the **2** level enhancement pursuant to § 2B1.1(b)(10)(C)(i). Instead, the facts alleged in the PSR support the opposite conclusion. To be sure, the Probation Office correctly observes that subsection (b)(10)(C)(i) of the Guidelines calls for a **2** level enhancement if a defendant's offense "involved the unauthorized transfer or use of any means of identification unlawfully to produce or obtain any other means of identification." In the Commentary to § 2B1.1, Application Note 9(A) states that "'Means of identification' has the meaning given that term in 18 U.S.C. § 1028(d)(7), except that such means of identification shall be of an actual (i.e. not fictitious) individual, other than the defendant or a person for whose conduct the defendant is accountable under § 1B1.3 (Relevant Conduct)." In turn, 18 U.S.C. § 1028(d)(7) states

> The term "means of identification" means any name, or number that may be used, alone or in conjunction with any other information, to identify a specific individual, including –
>
> (A) name, social security number, date of birth, official State or government issued driver's license or identification number, alien registration number, government passport number, employer or taxpayer identification number;
> (B) unique biometric data, such as a fingerprint, voice print, retina or iris image, or other unique physical representation;
> (C) unique electronic identification number, address, or routing code; or
> (D) telecommunication identifying information or access device (as defined in section 1029(e)).

In the instant case, the Probation Office alleges five separate instances relating to Mr. Nawaz's offense conduct. The Probation Office alleges that "the first account was opened under

the name 'Liaqat Cheema', date of birth November 20, 1963, and social security number [xxx-xx]-3469" as to Account-1.  See PSR 5, ¶11.  However, the Probation Office also notes that "[r]ecords provided by SSA revealed that this social security number belongs to a nine-year-old boy who was born on March 9, 1997, and is not 'Liaqat Sharma.'"  Id.  The name 'Liaqat Sharma' with the same social security number was also used to open Account-2.  See PSR 5, ¶12.  For each of these accounts, a fictitious person was created by pairing a name and birth date of a non-existent person with a social security number that did not match the name or birth date.  For Account-3, the account was opened "under the name 'Jabbar Hayyad,' date of birth April 28, 1959, and social security number [xxx-xx]-7941; however, "SSA records indicated that the social security number is invalid and has never been issued to any individual."  See PSR 5, ¶14(a).  Here, another fictitious person was created with a name and birth date of a non-existent person and an invalid social security number.  As for Account-4, the account was opened "under the name 'Munzar Ahmad,' date of birth August 2, 1976, and social security number [xxx-xx]-6439"; and "SSA records indicated that the social security number belongs to a seven-year-old girl who was born on October 6, 1999, and is not named 'Munzar Ahmad.'"  See PSR 5, ¶14(b).  Here, too, a fictitious person was created by pairing a name and birth date of a non-existent person with a social security number that did not match the name or birth date.  Finally, the Probation Office alleges that Account-5 was opened "under the name 'Ragweer Rashit," date of birth July 13, 1958, and social security number [xxx-xx]-8894"; and "SSA records indicated that the social security number is invalid and has never been issued to any individual."  See PSR 5, ¶14(c).  In this final instance, a fictitious person was created with a name and birth date of a non-existent person and an invalid social security number.

In each instance the offense conduct involved the creation of a fictitious person. Hence, the names, birth dates and social security numbers used in conjunction with one another did not identify an actual specific individual. See 18 U.S.C. § 1028(d)(7); Guidelines Commentary § 2B1.1, Application Note 9(A) . Nor was it established by the Probation Office that Mr. Nawaz was aware that the valid two social security numbers actually belonged to other individuals. See United States v. Beachem, 399 F.Supp.2d 1156, 1158 (W.D. Washington 2005) (finding that, in order to justify enhanced penalties of 18 U.S.C. § 1028A, government must provide proof that defendant "had knowledge that the identification she used belonged to another person"); compare United States v. Montejo, 353 F.Supp. 643, 644-45 (E.D. Va. 2005), aff'd, 442 F.3d 213 (4th Cir. 2006). As neither the Probation Office nor the government has alleged that Mr. Nawaz knowingly used the social security number of other actual persons, the **2** level enhancement is not warranted here. Moreover, while Mr. Nawaz readily admits that his offense caused a loss of between $400,000 and $1,000,000, he denies having knowledge of the five accounts or the alleged activity relating to the five accounts specified in paragraphs 8-14 of the PSR.

In sum, the **2** level enhancement provided by the Probation Office is not appropriate here, as it was not contemplated by either Mr. Nawaz or the government in the plea agreement, and the facts alleged in the PSR do not warrant such an enhancement. Thus, the proper advisory Guidelines total offense level is 17 with a range of 24-30 months.

B.     Factors Considered Pursuant to 18 U.S.C. § 3553(a)

Section 3553(a) of Title 18 of the United States Code sets forth a number of factors for the sentencing court to consider in imposing a sentence. As the Second Circuit Court of Appeals observed in United States v. Crosby, 397 F.3d 103 (2d Cir. 2005), "with the mandatory duty to

apply the Guidelines excised, the duty imposed by 18 U.S.C. § 3553(a) to 'consider' numerous factors acquires renewed significance." Crosby, 397 F.3d at 111. Initially, § 3553(a) promulgates that "[t]he sentencing court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection." Paragraph (1) directs the sentencing court to consider the nature and circumstances of the offense and the history and characteristics of the defendant. Paragraph (2) sets forth a number of policy considerations, including the need for the sentence imposed to reflect the seriousness of the offense, promote respect for the law, provide just punishment, afford adequate deterrence and protect the public from further crimes of the defendant. Paragraphs (3) and (4) direct the sentencing court to consider the kinds of sentences available and the kinds of sentences set forth in the Guidelines. Finally, Paragraphs (5), (6) and (7), direct the sentencing court to consider, respectively, any pertinent policy statements, the need to avoid unwarranted sentencing disparities, and the need to provide restitution.

    1.    Nature And Circumstances Of Offense And History And Characteristics Of Mr. Nawaz Pursuant To § 3553(a)(1)

In applying § 3553(a) to the facts of this case, a measure of lenity is warranted, as it comports with the statutory requirement that the sentence be "sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of [§ 3553(a)]." See 18 U.S.C. § 3553(a). Consideration of "the nature and circumstances of the offense and the history and characteristics of the defendant" suggests that Mr. Nawaz's sentence should reflect a number of favorable equities.

As for the nature and circumstances of the offense, Mr. Nawaz stands convicted of use of unauthorized access devices to obtain monetary gain and conspiracy to do the same. While Mr. Nawaz acknowledges the seriousness of the offense, it is important to note that neither weapons

nor violence were involved in the offense. Finally, Mr. Nawaz was not the leader or driving force of the conspiracy. Rather, he was one spoke in a conspiracy more vast than even he was aware.

Mr. Nawaz's personal history and characteristics provide a number of favorable equities. As noted, he has never been convicted of a criminal offense other than the instant offense, and has no prior involvement with the criminal justice system. He is a naturalized United States citizen. See PSR, ¶43. He is active in his community, and a regular attendee of his community mosque. He does not take illegal drugs or drink alcohol. See PSR 11, ¶56. He has had an exemplary work history, and files his income taxes each year. See PSR 11, ¶58-60; Exhibit B, Letter of Asaf Vardag & Exhibit D, Tax Records 2006. He has very close ties to his wife and five children, as he has always supported his wife and children financially and emotionally. See Exhibit A, Affidavit of Furrukh Nawaz. In fact, Mr. Nawaz is the sole wage earner, who supports his wife and five children on an income of $3333 a month in addition to a rental income the family receives. See Exhibit A, Affidavit of Furrukh Nawaz & Exhibit C, Affidavit of Tariq Hamad. The PSR notes that Mr. Nawaz and his family receive rental income in the amount of $3,900 a month in addition to $3333 income from his employment for a total income of $7,233 a month. However, the family's total expenses are $4,398 a month. Thus, if the family loses Mr. Nawaz's income, the family will have a shortfall of $498 a month. Moreover, Mr. Nawaz is responsible for looking after the rental property and receiving the rents. See PSR at 13-14, ¶67 (discussion of income).

In examining family ties as a basis for the exercise of favorable discretion, the Second Circuit Court of Appeals has long held that favorable consideration is warranted where a lengthy term of imprisonment may "wreak extraordinary destruction on dependants who rely solely on

the defendant for their upbringing." United States v. Johnson, 964 F.3d 124, 129 (2d Cir. 1992) (defendant was sole supporter of four young children); United States v. Galante, 111 F.3d 1029. 1035 (2d Cir. 1997) (upholding favorable discretion where defendant provided substantial support for wife and two children, and wife spoke limited English); United States v. Alba, 933 F.2d 1117, 1122 (2d Cir. 1991) (upholding favorable discretion where defendant supported wife, two young children and disabled father); compare United States v. Smith 331 F.3d 292, 294 (2d Cir. 2003) (reversing exercise of favorable discretion where defendant only supported one child and wife was capable of working); United States v. Madrigal, 331 F.3d 258, 260 (2d Cir. 2003) (reversing exercise of favorable discretion where only one of defendant's six children were under 18 and there was no finding that defendant was the only family member capable of supporting family).

In United States v. Huerta, 371 F.3d 88 (2d Cir. 2004), the Second Circuit ruled that "the absence or presence of adults who can step in during the defendant's incarceration to assist with caring and providing for the defendant's dependants – is a central part of the extraordinary family circumstances inquiry." Huerta 371 F.3d at 95.  See also United States v. Dominguez, 293 F.3d 192 (3d Cir. 2002) (defendant, living with his elderly parents who were physically and financially dependant on him, merited favorable consideration); United States v. Gaskill, 991 F.2d 82 (3d Cir. 1993) (defendant responsible for the care of his mentally ill wife); United States v. Rivera, 994 F.2d 942, 948 (1st Cir. 1993) (examining existing judicial principles relating to family ties and concluding courts have found a defendant merits favorable consideration based on family ties where the defendant is "irreplaceable" in his or her emotional or financial support of the family).

While the cases cited address specifically the appropriate standards for a downward departure for family ties under the Guidelines, these standards are equally applicable under the rubric of 18 U.S.C. § 3553(a) factors.  See, e.g. United States v. Kon, 04 Cr. 271-03, slip. op. 10 (RWS) (S.D.N.Y. 11/2/06) (U.S.D.J. Sweet) ("Considering the history and characteristics of the defendant pursuant to § 3553(a)(1), the Court takes note of Kon's extraordinary family circumstances.") (See Exhibit E, Sentencing Opinion).  Applying these standards to the instant case, Mr. Nawaz also warrants favorable consideration based on family ties and responsibilities.  Mr. Nawaz is the sole wage earner in his immediate family, and his wife and five children are dependant on his financial support.  Mr. Nawaz is married to Furrukh Nawaz since January 16, 2000, and they have twin daughters, Eiman and Foha, who are seven-years-old, a daughter, Huda, who is four years-old, a daughter Fatima, who is one-year old, and a son Sultan who is four-months old.  PSR 9, ¶45-47.  Mr. Nawaz's wife speaks limited English, and because she must attend to her five young children, she cannot work a full time job.

While Mr. Nawaz's wife stated that Mr. Nawaz's parents would help support her if Mr. Nawaz is imprisoned, Mr. Nawaz's father is 54 years-old and his mother is 53 years-old, and both of them spend a considerable amount of time each year in their native Pakistan.  See PSR 9, ¶41.  Thus, neither of Mr. Nawaz's parents is employed except for sporadic temporary work, and neither has substantial assets.  Thus, Ms. Nawaz's belief that they will be able to help support her and the five young children seems like a case of wishful thinking.  See PSR 9-10, ¶47.  Likewise, Mr. Nawaz's hope that his friend, Qumar Shahzad, will help pay his monthly household expenses while he is incarcerated seems to be more of a hope than a reality.  If Mr. Nawaz is required to serve a lengthy period of incarceration, his wife and five children would lose their main source of financial support for the entire period of his incarceration, except for whatever his

elderly parents and family friend can provide. Thus, Mr. Nawaz urges the Court to impose a sentence that reflects the financial and caretaking responsibilities in this case.

Because of his strong family and community ties, his exemplary work history, the lack of any prior criminal convictions, his lack of any drug or alcohol history, and his deep regret for having committed the instant offense, the likelihood of recidivism is negligible. A sentence reflecting these substantial equities is warranted here.

2. <u>Additional Factors To Be Considered Pursuant To § 3553(a)(2)-(7)</u>

A sentence reduction from the Guidelines range also meets the policy goals expressed in subsection (2) of § 3553(a). Such a sentence would "provide just punishment for the offense," and could be fashioned in a manner to "promote respect for the law," "reflect the seriousness of the offense," "afford adequate deterrence," and "protect the public." A just sentence reflecting Mr. Nawaz's substantial equities would be sufficient to meet these policy goals. A lengthy period of incarceration would not serve to rehabilitate Mr. Nawaz, it would only diminish his prospects for returning to the productive life he once knew. In short, a lengthy sentence of imprisonment would be a greater sentence than necessary to meet the policy goals stated in § 3553(a)(2).

In regard to the kinds of sentences available, a lengthy sentence of incarceration would not serve the interests of the government, Mr. Nawaz nor the Court in its administration of justice. As noted, Mr. Nawaz should be given an opportunity to rehabilitate himself in order to return to his family and community and be a productive member of each as he was before his involvement in the instant offense. A lengthy period of incarceration would do little to serve his rehabilitation. The need to provide restitution also supports a sentence that does not include a lengthy period of incarceration. Mr. Nawaz should be permitted to return to his employment so

that he may begin paying the significant restitution in this case. Finally, it should be noted that, in regard to the "need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct," it is not uncommon for defendants to receive a measure of lenity when favorable equities exist. See, e.g., Huerta, supra, 371 F.3d at 90-91 (defendant fraudulently received $1.7 million from Medicare and sentenced to five months imprisonment and five months home incarceration); United States v. Galante, 111 F.3d 1029 (2d Cir. 1997) (upholding defendant's sentence of time served, 24 months home detention, five years supervised-release, and 225 hours community service for level 28 drug conviction). There are no pertinent policy points to consider outside of those discussed.

In sum, it is respectfully submitted that this Court impose a sentence reflecting Mr. Nawaz's substantial equities, including his close family ties and his family's reliance on his emotional and financial support. Furthermore, Mr. Nawaz's employment history, his role in the instant offense, the aberrant nature of the criminal conduct, the lack of a prior criminal record, and the unlikelihood of recidivism counsel for lenity here. For the foregoing reasons, Mr. Nawaz respectfully requests a sentence reflecting the favorable equities in this case.

Respectfully submitted,

s/ Bruno C. Bier
Bruno C. Bier, Esq.
BB-1633
38 West 32nd Street, Suite 1603
New York, New York 10001
t: (212) 481-4900
f: (212) 481-9227
bruno_bier@yahoo.com

ADDENDUM

Section 3553(a) promulgates:

>(a) Factors to be considered in imposing a sentence. – The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of ths subsection. The Court, in determining the particular sentence imposed, shall consider –
>(1) the nature and circumstances of the offense and the history and characteristics of the defendant;
>(2) the need for the sentence imposed –
>(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>(B) to afford adequate deterrence to criminal conduct;
>(C) to protect the public from further crimes of the defendant; and
>(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
>(3) the kinds of sentences available;
>(4) the kinds of sentence and the sentencing range established for –
>(A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines –
>(I) issued by the Sentencing Commission pursuant to section 994(a)(1) of title 28, United States Code, subject to any amendments made to such guidelines by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28); and
>(ii) that, expect as provided in section 3742(g), are in effect on the date the defendant is sentenced; or
>(B) in the case of a violation of probation or supervised relief, the applicable guidelines or policy statements issued by the Sentencing Commission pursuant to section 994(a)(3) of title 28, United States Code, taking into account any amendments made to such guidelines or policy statements by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28);
>(5) any pertinent policy statement –
>(A) issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28, United States Code, subject to any amendments made to such policy statement by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28); and
>(B) that, expect as provided in section 3742(g), is in effect on the date the defendant is sentenced.
>(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
>(7) the need to provide restitution to any victims of the offense.